IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| WILLIAM GRIFFIN and P&G CONSTRUCTION CONSULTANTS, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 1:23-cv-02142-STA-jay ) |
| HAYWOOD COUNTY, TENNESSEE, and SERGEANT SCOTT HUNTER, and LIEUTENANT SHAWN WILLIAMS, and TENNESSEE FARMERS MUTUAL INSURANCE COMPANY and CHARLES TROTTER, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SCOTT HUNTER'S MOTION TO DISMISS

Defendant Scott Hunter, by and through counsel, files this memorandum in support of Defendant's motion to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**BACKGROUND**

Plaintiffs, William Griffin and P&G Construction Consultants, LLC ("P&G") filed their original complaint on March 16, 2023. (ECF No.1). Also on March 16, 2023, Plaintiffs filed their First Amended Complaint ("FAC"). (ECF No. 6). Plaintiffs sued Defendants Haywood County, Lieutenant Shawn Williams, Tennessee Farmers Mutual Insurance Company, Charles Trotter, and this Defendant.[1] (*Id.*).

---

[1] It appears that Plaintiffs have not served Defendants Haywood County, Tennessee, Shawn Williams, or Tennessee Farmers Mutual Insurance Company. (ECF No. 11).

Plaintiffs' allegations against this Defendant essentially appear in one paragraph of the FAC. (*Id*. at ¶ 10). According to Plaintiffs, on March 15, 2022, "Griffin went to the Haywood County Sheriff's Department to advise that he had obtained an assignment of claims on behalf of P&G Consultants . . . from Faye Sorrell" and that he was "holding funds pursuant to the assignment." (*Id*. ¶ 9). Once there, Plaintiffs allege:

> Hunter unreasonably seized Griffin and unlawfully arrested when Hunter did not allow Griffin to leave gave Griffin the impression that he was not able to voluntarily leave until he had committed to return the funds to Faye Sorrell that were lawfully in his possession as an agent of P & G Consultants LLC and terminate the valid assignment of claim that P & G Consultants had with Faye Sorrell.

(*Id*. ¶ 10). According to Plaintiffs, after the in-person meeting, "Hunter continued to threaten and unlawfully restrain Griffin via his ability to conduct business in Haywood County" through allegedly threatening communications and emails until "Hunter deprived P&G of its property interests in the funds and the assignment of claims on or about March 21, 2022." (*Id*.).

From what this Defendant can decipher, Plaintiffs bring three separate claims against this Defendant based upon the above allegations. First, Plaintiffs contend that this Defendant[2] violated Griffin's Fourth Amendment rights by using excessive force and by "unlawfully seizing him" and "unlawfully arresting him" on March 15, 2022. (*Id*. ¶ 21). Second, Plaintiffs contend that this Defendant violated P&G's Fourteenth Amendment "procedural and substantive due process" rights by depriving it "of its funds and assignment" on March 21, 2022. (*Id*.). And third, Plaintiffs contend that the intentional actions of this Defendant constituted "assault, battery and other intentional torts." (*Id*. ¶ 24).

---

[2] In Paragraph 21 of the FAC, Plaintiffs actually allege that "Jordan Spraggins" violated Griffin's Fourth Amendment rights. There is no individual named "Jordan Spraggins" in this lawsuit. (*Id*. ¶ 21). Considering Paragraph 21 appears in a section titled "First Cause of Action against Scott Hunter," this Defendant assumes that the paragraph applies to Hunter.

## STANDARD

A court may grant a motion to dismiss for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). In reviewing a motion to dismiss, a court should not accept as true legal conclusions or unwarranted factual inferences. *See Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Erie Cty. v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

## ARGUMENT

### I. ALL PLAINTIFFS' CLAIMS THAT AROSE ON MARCH 15, 2022, ARE BARRED BY THE STATUTE OF LIMITATIONS.

While there is a "long-established principle that a plaintiff has no obligation to plead that his claim is *not* barred by the statute of limitations," said principle is overcome if "'it is apparent from the face of the complaint that the statute of limitations has passed.'" *U.S. v. Carell*, 681 F. Supp.2d 874, 843 (M.D. Tenn. 2009) (emphasis in original) (quoting *Bishop v. Lucent Tech. Inc.*, 520 F.3d 516, 520 (6th Cir. 2008)). Under Tennessee law, the statute of limitations applicable to all 42 U.S.C. § 1983 actions is the same as the statute of limitations for personal injury, one year. TENN. CODE ANN. § 28-3-104(a). *See also Haley v. Clarksville-Montgomery Cty. Sch. Syst.*, 353 F. Supp.3d 724, 730 (M.D. Tenn. 2018); *Wolfe v. Perry*, 412 F.3d 707, 713-14 (6th Cir. 2005) (Because there is no applicable "statute of limitations governing § 1983 actions, federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought."). Like Plaintiffs' § 1983 claims, Plaintiffs intentional tort claims of assault and battery are also subject to a one-year statute of limitations. TENN. CODE ANN. § 28-3-104(a)(1). *See also Ramsay v. Custer*, 387 S.W.3d 566, 570 n.1 (Tenn. Ct. App. 2012).

Federal standards determine when a claim accrues, i.e. when the statutory period begins. *Wallace v. Kato*, 549 U.S. 384, 388, 394 (2007). To that extent, "the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Kovacic v. Cuyahogo Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 307 (6th Cir. 2010). Notably, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Ruiz-Bueno v. Maxim HealthCare Servs.*, 659 F. App'x. 830, 834 (6th Cir. 2016) (citing *Rotella v. Wood*, 528 U.S. 549, 555, (2000)). Thus, under the federal discovery rule, federal courts "look[] to what event should have alerted the typical lay person to protect his or her rights." *A to Z, Inc. v. City of Cleveland*, 281 F. App'x 458, 460 (6th Cir. 2008). Furthermore, "[f]ederal procedural law provides that a plaintiff need not be aware of every detail or person involved in causing his injury for the limitations period to commence." *Easterly v. Budd*, 2006 U.S. Dist. LEXIS 58170, *25 (N.D. Ohio Aug. 16, 2006) (citing *Mounts v. Grand Trunk Western R.R.,* 198 F.3d 578 (6th Cir. 2000)). *See also Dowdy v. Prison Health Servs.*, 21 F. App'x 433, 435 (6th Cir. 2001) ("The statute of limitations is not tolled while a plaintiff attempts to identify the correct defendants.").

In this instance, all of Plaintiffs' claims arising from the March 15, 2022, meeting with Hunter are clearly barred by the applicable statute of limitations because Plaintiffs did not file this lawsuit until March 16, 2023. In cases of alleged Fourth Amendment violations brought under § 1983, the statute of limitations begins to run on the date that the alleged constitutional violations occurred." *York v. Fiddler*, 2023 U.S. Dist. LEXIS 74268, at *8 (M.D. Tenn. Apr. 28, 2023). Specifically, the statute of limitations for an unlawful seizure of person accrues at the time of the seizure. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Meanwhile, a false arrest claim accrues at the time an individual is "held pursuant to legal process." *York v. Fiddler*, 2023 U.S. Dist. LEXIS

74268, at *10 (internal citations omitted). And an excessive force claim arises at the date the force was used. *Hodge v. City of Elyria*, 126 F. App'x 222, 225 (6th Cir. 2005).

Griffin alleges that he went to the Haywood County Sheriff's Department on March 15, 2022, and was "unreasonably seized" and "unlawfully arrested," when Hunter apparently gave him the "impression" he was not free to leave. (ECF No. 6, ¶ 10). Based on Plaintiffs' allegations, all Fourth Amendment claims accrued on March 15, 2022, and are barred by the applicable statute of limitations. And Plaintiffs' Fourteenth Amendment claims are likewise barred by the statute of limitations to the extent Plaintiffs assert violations of the Fourteenth Amendment based upon this Defendant's actions that occurred on March 15, 2022.

Plaintiffs' assault and battery claims suffer the same fate. Like Plaintiffs' Fourth Amendment claims, both the assault and battery claims arise on March 15, 2022—the only date Plaintiffs allege any in-person contact with Hunter. *See Ramsay v. Custer*, 387 S.W.3d 566, 570 n.1 (Tenn. Ct. App. 2012) (cause of action accrued on date of alleged assault). Consequently, both claims are barred by the one-year statute of limitations.

Notwithstanding, Plaintiffs allege that the aforementioned actions constitute "a continuing violation." (ECF No. 6, ¶ 10). But this is not the case. Under federal law, "a 'continuous violation' occurs, and will extend the limitations period, if the defendant engages in continuing wrongful conduct; injury to the plaintiff accrues continuously; and had the defendant at any time ceased its wrongful conduct, further injury would have been avoided." *Goldsmith v. Sharrett*, 614 Fed. Appx. 824, 827 (6th Cir. 2015) (quoting *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009)). The continuing violation doctrine typically arises in the context of employment discrimination cases and is "rarely extended" to § 1983 claims. *Id*. at 828 (citing *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003)). The doctrine, where applicable, operates to preserve claims that would

otherwise be time-barred in certain cases involving ongoing discrimination or ongoing violations of civil rights. *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991). As already explained, the facts alleged here indicate discrete alleged constitutional rights violations on March 15, 2022. Moreover, the alleged injuries to Plaintiffs were not continuous. They occurred on March 15, 2022, when Griffin was allegedly seized and on March 21, 2022, when P&G was allegedly deprived of its funds.[3] As a result, the continuing violation doctrine is inapplicable to Plaintiffs' § 1983 claims.

As for Plaintiffs' state law claims, Tennessee courts decline to recognize the continuing violation doctrine. *See also Vaughn v. DP Packaging, Inc*., 17 F. App'x. 286, 290 (6th Cir. 2001) ("Tennessee courts have found that the continuous tort doctrine has been completely subsumed by the discovery rule."). *See also Alsbrook v. Concorde Career Colleges*, 469 F. Supp. 3d 805, 835 (W.D. Tenn. 2020). Consequently, all Plaintiffs' claims arising on March 15, 2022, are untimely and barred by the statute of limitations.

## II. PLAINTIFFS' FAC FAILS TO STATE A CLAIM AGAINST DEFENDANT HUNTER.

Rule 8 of the FEDERAL RULES OF CIVIL PROCEDURE requires that in order to state a claim, a plaintiff must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While the pleading standard of Rule 8 "does not require detailed factual allegations," it still "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*. at 664. This standard demands that the factual allegations "raise a right to relief above the speculative level" and "nudge[] the[] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*,

---

[3] While Plaintiffs generally allege continued threatening emails and other communications, these communications cannot constitute a constitutional violation as discussed *infra*.

550 U.S. 544, 570 (2007). Thus, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Several considerations guide whether a complaint meets the facial-plausibility standard. On one hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Further, the factual allegations of a pleading "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. On the other hand, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). As explained below, Plaintiffs clearly fail to meet the pleading standards articulated in Rule 8 or *Iqbal* and *Twombly*.

### A. Plaintiffs fail to state a Fourth Amendment excessive force claim against Hunter.

Plaintiff Griffin alleges Hunter used excessive force by "seizing him or unlawfully arresting him." (ECF No. 6, ¶ 21). But what is notably missing from Plaintiffs' allegations is any allegation that force was actually used. (*Id*.). An excessive force claim inherently requires an actual use of force. *Graham v. Connor*, 490 U.S. 386, 397 (1989) (applying an objective reasonableness test to any use of force). Consequently, because Plaintiffs do not allege any specific use of force by Hunter, Griffin's Fourth Amendment excessive force claim must be dismissed.

### B. Plaintiffs fail to state a Fourth Amendment unreasonable seizure claim against Hunter.

Not all personal interactions between policemen and citizens involves seizures of persons. *Terry v. Ohio*, 392 U.S. 1, 20 (1968). Indeed, where an encounter is consensual, no seizure has occurred. *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances

surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Where there is no use of force to seize an individual, "there must be a show of authority from the officers and the defendant must submit to the officers' show of authority." *United States v. Ward*, 756 F. App'x. 560, 564 (6th Cir. 2018). "The required show of authority exists only if, 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States v. Johnson*, 2022 U.S. App. LEXIS 360, at *10 (6th Cir. Jan. 4, 2022) (quoting *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011)).

Based on the allegations in the FAC, it is unclear whether Griffin alleges Hunter would not allow him to leave or whether he was under the "impression that he was not able to voluntarily leave." Plaintiffs allege both scenarios. (ECF No. 6, ¶ 10). Regardless, the allegations set forth in the FAC plainly fail to meet the pleading standard articulated in *Iqbal* and *Twombly*. Courts within the Sixth Circuit routinely dismiss claims based upon similar conclusory allegations. *See Scozzari v. McGraw*, 500 F. App'x 421 (6th Cir. 2012) (affirming dismissal of Section 1983 claim alleging illegal detention and unreasonable seizure for failing to state a plausible claim under *Iqbal* and *Twombly*); *Hanson v. Kwiatkowski*, 2021 U.S. Dist. LEXIS 176831, at *28 (E.D. Tenn. Sept. 17, 2021) (dismissing Fourth Amendment unreasonable seizure claim at motion to dismiss stage where the plaintiff alleged a "'continued and prolonged detention' that occurred during the 2.5-mile hike back to the trailhead" where officers, in relevant part, did not advise "he was free to leave" during the hike).

Like the aforementioned cases, Plaintiffs offer nothing more than conclusory statements such as that this Defendant "did not allow [him] to leave," and/or that this Defendant "gave Griffin the impression that he was not able to voluntarily leave." But he alleges no actual facts to show

that those conclusions are true. For example, he asserts no fact to show that the alleged encounter was anything more than a consensual interaction. Griffin alleges he voluntarily arrived at the Sheriff's Department. (ECF No. 6, ¶ 9). Once arriving voluntarily at the Sheriff's Department, the FAC asserts no actual facts to suggest that the encounter became nonconsensual, that Hunter made any attempt to keep Griffin at the Sheriff's Department, or that Hunter intentionally made any "show of authority" to seize Griffin. Additionally, Griffin does not even allege if he was physically detained or how long he was at the Sheriff's Department.[4] In fact, it is entirely unclear from the facts alleged whether Griffin was prevented from leaving the Sheriff's Department or from leaving the meeting with Hunter. Without more, Griffin's allegations fail to meet *Iqbal* and *Twombly's* standards and his unlawful seizure claim fails.

### C. Plaintiffs fails to state a Fourth Amendment unlawful arrest claim against Hunter.

To state a "unlawful arrest" claim under the Fourth Amendment, a plaintiff must show "that an arrest was made without probable cause." *Givens v. Loeffler*, 2021 U.S. App. LEXIS 28368, at *6 (6th Cir. Sept. 17, 2021) (citing *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010)). Here, Griffin has not alleged any facts to support he was even arrested let alone that the arrest was made without probable cause. His claims of "unlawful arrest" appear to simply be a legal conclusion with no factual basis. And even if this Court determines Plaintiffs' unadorned reference to an unlawful arrest is sufficient, there is nothing to indicate that such an arrest was made without probable cause. This is plainly insufficient under *Iqbal* and *Twombly*. *See Washington v. Ohio*, 2022 U.S. Dist. LEXIS 39105, at *7-8 (N.D. Ohio Mar. 4, 2022) ("Finally, to the extent Washington alleges false imprisonment, malicious prosecution, or sham legal process, the

---

[4] Based on the complaint, it appears he left the Sheriff's Department prior to March 21, 2022, considering he communicated with Hunter via email at a later date. (ECF No. 6 ¶ 10).

complaint fails to contain any facts to support such claims. Rather, the complaint includes conclusory allegations that he was 'subjected to false arrest and illegal detainment.' And the only reference to malicious prosecution and sham legal process is included in Washington's request for relief. Such statements fail to satisfy the *Iqbal*/*Twombly* standard. Washington's purported claims are nothing more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation' and therefore fail to state a plausible claim."). Therefore, Plaintiffs fail to state a Fourth Amendment claim for false arrest.

### D. "Communications, threats, and emails" cannot form the basis of § 1983 claim.

Plaintiffs contend that "Hunter continued to threaten and unlawfully restrain Griffin via his ability to conduct business in Haywood County by communication, threats, and e-mails and other communications that continued" after March 15, 2022. (ECF No. 6, ¶ 10). Setting aside that Hunter could not possibly have seized Griffin within the meaning of the Fourth Amendment by simply hampering his "ability to conduct business," the receipt of emails and other communications cannot state a § 1983 claim. "[A]n individual does not suffer a constitutional deprivation every time he is subject to the petty harassment of a state agent." *Vasquez v. Hamtramck*, 757 F.2d 771, 773 (6th Cir. 1985). "It is well established that allegations of verbal harassment against a state agent fail to state a claim under § 1983 because 'being placed in fear from spoken words is not an actual infringement of a constitutional right' and 'mere threat to do an act prohibited by the Constitution is not equivalent to doing the act itself.'" *El-Bey v. Wallace*, 2023 U.S. Dist. LEXIS 22782, at *37 (S.D. Ohio Feb. 9, 2023) (quoting *Newsome v. Erwin*, 137 F.Supp.2d 934, 940 n. 5 (S.D. Ohio 2000)). *See also Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 452, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."). Plaintiffs do not allege the contents of the

alleged threatening communications. (ECF No. 6, ¶ 10). Nonetheless, no matter how threatening Hunter's alleged "communication, threats, e-mails, and other communications" to Griffin were, they cannot form the basis of any relief under § 1983.

### E. Plaintiffs fail to state any battery or assault claim against Hunter.

Plaintiffs allege Hunter is liable for the torts of assault and battery. (ECF No. 6 ¶ 21). Assault requires the following two elements: (1) "An intentional attempt or the unmistakable appearance of an intentional attempt to do harm to, or to frighten, another person; and [(2)] The present ability or the unmistakable appearance of the present ability to do that harm or to cause that fright." *Lacy v. Hallmark Volkswagen Inc.*, 2017 Tenn. App. LEXIS 462, at *11 n.5 (Tenn. Ct. App. July 10, 2017) (quoting 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civ. 8.01 (2014 ed.)). In other words, an assault constitutes "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against that person." *Vafaie v. Owens*, 1996 Tenn. App. LEXIS 557, at *8 (Tenn. Ct. App. Sept. 6, 1996) (emphasis added). Meanwhile, in order to state a claim for battery, a plaintiff must allege "an intentional act that causes an unpermitted, harmful or offensive bodily contact." *Lacy v. Hallmark Volkswagen Inc.*, 2017 Tenn. App. LEXIS 462, at *9-10 (Tenn. Ct. App. July 10, 2017).

In this instance, Plaintiffs fail to state a claim for either tort. Plaintiffs do not allege that Hunter made any attempt to physical harm or frighten Griffin. Likewise, Plaintiffs do not allege any physical contact whatsoever between Griffin or Hunter let alone any "unpermitted, harmful or offensive contact" by Hunter. Consequently, Plaintiffs fail to state a claim for assault or battery.

## F. Plaintiffs fail to state a Fourteenth Amendment substantive due process claim against Hunter.

Plaintiffs contend Hunter violated P&G's substantive due process rights. (ECF No. 6, ¶ 21). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id*. As this Court previously outlined, "[t]he Supreme Court has consistently held that where 'a constitutional claim is covered by a specific constitutional provision…the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Wyatt v. Jones*, 2020 U.S. Dist. LEXIS 63725, at *8 (W.D. Tenn. Apr. 10, 2020) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)). Accordingly, the Due Process Clause of the Fourteenth Amendment does not apply to cases in which there is an amendment that provides an "explicit textual source of constitutional protection…." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Here, Plaintiffs' specific allegations of excessive force, unreasonable seizure, and false arrest are squarely protected by the Fourth Amendment. And their claims of property deprivation are a procedural (not substantive) due process claim. *See Masjid Malcom Shabazz House of Worship v. City of Inkster & Mark Minch*, 2020 U.S. Dist. LEXIS 222332, at *20-21 (E.D. Mich. Nov. 30, 2020) (citing *Kiser v. Kamder*, 831 F.3d 784, 791 (6th Cir. 2016)) ("Defendant's substantive due process claim is therefore duplicative of its procedural due process claim and is appropriately dismissed."). Accordingly, Plaintiffs' Fourteenth Amendment substantive due process claim fails as a matter of law.

### G. Plaintiffs fail to state a Fourteenth Amendment procedural due process claim against Hunter.

Plaintiffs also assert Hunter violated P&G's procedural due process rights. (ECF No. 6, ¶ 21). Plaintiffs' due process claim arises under the Fourteenth Amendment. Importantly, where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *See Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Parratt v. Taylor,* 451 U.S. 527, (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). Accordingly, to establish a violation of constitutional rights due to a deprivation of property, a plaintiff must plead and prove the inadequacy of state processes. *See e.g., McLaughlin v. Weathers*, 170 F.3d 577, 582 (6th Cir. 1999); *Vicory v. Walton,* 721 F.2d 1062 (6th Cir. 1983); *Quinn v. W. Mental Health Hosp. Atty.*, 2016 U.S. Dist. LEXIS 45890, at *4 (W.D. Tenn. Mar. 9, 2016), *adopted by Quinn v. Western Mental Health Hosp. Atty.*, 2016 U.S. Dist. LEXIS 45705, at *2 (W.D. Tenn. Apr. 5, 2016). As explained by the Sixth Circuit in *Vicory*:

> Section 1983 was not meant to supply an exclusive federal remedy for every alleged wrong committed by state officials. Rather, the statute is a remedy for only those wrongs which offend the Constitution's prohibition against property deprivations without procedural due process. Thus we hold that in section 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. In a procedural due process case under section 1983, the plaintiff must attack the state's corrective procedure as well as the substantive wrong.

*Vicory*, 721 F.2d at 1065-66. Courts have consistently held that the availability of state law tort actions suffices as adequate post-deprivation remedies and precludes a § 1983 property deprivation claim. *See Wagner v. Higgins*, 754 F.2d 186, 190-93 (6th Cir. 1985).

Here, Plaintiffs allege a violation of P&G's due process rights by being deprived of its "property interest in the funds and assignment of claims." (ECF No. 6, ¶ 10). However, state law

provides a potential remedy through a state law tort action. Thus, a Fourteenth Amendment claim fails as a matter of law.

Regardless, Plaintiffs fail to plead sufficient facts to state a procedural due process claim against Hunter. Plaintiffs only conclusory state that Hunter deprived P&G of the funds on March 21, 2022. (*Id*. at ¶ 10). However, they do not allege any facts evidencing that it was Hunter himself that deprived P&G of the funds or explain how Hunter deprived P&G of the funds. Such "threadbare recitals" are insufficient to satisfy federal pleading standards. Therefore, Plaintiffs' procedural due process claim should be dismissed.

### III. HUNTER IS ENTITLED TO QUALIFIED IMMUNITY.

Under the doctrine of qualified immunity, "government officials […] are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Once qualified immunity is raised, the plaintiff bears the burden to prove that the defendant is not entitled to it. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). To determine whether qualified immunity is warranted, a court must ask: (1) whether the alleged facts, taken in a light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established in the specific context so that a reasonable official would understand that he is violating that right. *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

When a complaint fails to establish a plausible constitutional claim against an individual governmental actor, the complaint is subject to dismissal on qualified immunity grounds. *Crawford v. Tilley*, 15 F.4th 752, 764 (6th Cir. 2021). Indeed, "in *Iqbal* itself […] the Supreme

Court affirmed the dismissal of the plaintiff's complaint on qualified immunity because it failed to establish a plausible claim." *Id*. at 764-65 (citing *Iqbal*, 556 U.S. at 687). Here, as addressed above, Plaintiffs have failed to plead sufficient facts to support a constitutional claim against Hunter. As a result, Hunter is entitled to qualified immunity. *Tilley*, 15 F.4th at 766.

## CONCLUSION

Based upon the foregoing and the entire record in this cause, Plaintiffs' claims against Defendant Hunter should be dismissed in their entirety.

Respectfully submitted,

PENTECOST, GLENN & TILLY, PLLC

By: s/Haynes T. Russell
Nathan D. Tilly (#31318)
Haynes T. Russell (#36923)
*Attorneys for Defendants*
162 Murray Guard Drive, Suite B
Jackson, Tennessee 38305
(731) 668-5995 – Telephone
(731) 668-7163 – Facsimile
ntilly@pgtfirm.com
hrussell@pgtfirm.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via US District Court ECF system upon:

Drayton D. Berkley
Berkley Law Firm, PLLC
1255 Lynnfield, Ste. 226
P.O. Box 771048
Memphis, TN  38177

on or before the filing date thereof.

DATE:  This the 28th day of July, 2023.

By:   s/Haynes T. Russell
      Haynes T. Russell